IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON
AUG 1 2017
Per_____
DEPUTY CLERK

JUSTIN GLOVER, JR.,        :
    Petitioner        :
                :
    v.        :        CIVIL NO. 3:CV-14-1800
                :
                :        (Judge Conaboy)
BRIAN COLEMAN,        :
    Respondent        :

---

## MEMORANDUM
## Background

Justin Glover, Jr., an inmate presently confined at the
Fayette State Correctional Institution, Labelle, Pennsylvania (SCI-
Fayette), initiated this pro se petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  Service of the Petition was
previously ordered.

Glover and a co-defendant Lawrence Murrell, Jr. were convicted
of homicide and related charges on February 19, 2008 following a
jury trial in the Dauphin County Court of Common Pleas.  Petitioner
was sentenced to a term of life imprisonment plus eleven (11) to
twenty-two (22) years on June 18, 2008.

Following a direct appeal which asserted multiple claims of
trial court error, Petitioner's conviction and sentence were
affirmed by the Pennsylvania Superior Court on March 3, 2010.  See
Commonwealth v. Glover, 996 A.2d 542 (Pa. Super 2010).  The
Pennsylvania Supreme Court denied Glover's petition for allowance

1

of appeal. See Commonwealth v. Glover, 3 A.3d Pa. 670 (Pa. Aug. 3, 2010)(Table).

Petitioner next sought relief via a timely action pursuant to Pennsylvania's Post Conviction Relief Act (PCRA).[1] Petitioner's PCRA action raised multiple claims of ineffective assistance of counsel. The trial court dismissed the PCRA action by decision dated January 3, 2013. The Superior Court affirmed the PCRA dismissal. See Commonwealth v. Glover, 2014 WL 10978697 (Pa. Super. March 4, 2014). A petition for allowance of appeal was not filed.

By way of background, the Petitioner, his co-defendant Murrell, and the victim, Wesley Person, were allegedly involved in a fraudulent loan scheme in which involved applications for at least seventeen (17) car loans with no intention of either purchasing vehicles or repaying the loans. Other individuals also purportedly involved in the scheme included Karyn Jackson. Based upon the undisputed record, Person, Abdul McCauley, and Stephen Aikens went shopping in the Harrisburg, Pennsylvania area on December 23, 2005. They were later met by Glover and Murrell.

---

[1] See 42 Pa. Cons. Stat. Ann. § 9541 et seq. The PCRA "permits motions for post-conviction collateral relief for allegations of error, including ineffective assistance of counsel, unlawfully induced guilty pleas, improper obstruction of rights to appeal by Commonwealth officials, and violation of constitutional provisions." Hankins v. Fulcomer, 941 F.2d 246, 251 (3d Cir. 1991).

Person was last seen leaving the shopping area in a vehicle with the two co-defendants.

According to the Commonwealth, the victim was shot to death in the basement of a Harrisburg house owned by Murrell which was undergoing renovation. The victim was allegedly targeted for cheating his co-conspirators Glover and Murrell out of proceeds from the fraud. The body of the victim was discovered alongside a highway in the vicinity of Baltimore, Maryland during the early morning hours of December 24, 2005. It was determined that Person died from multiple gunshot wounds and his body had been subsequently set on fire.

During trial, the Commonwealth introduced cellular telephone tower data relating to the use of a cell phone owned by Petitioner's mother but which was allegedly in Petitioner's possession on the night of the murder. The data indicated alleged travel by Glover on a Harrisburg to Baltimore route.[2] Forensic examination of evidence found at the site where the body was recovered matched items in the house being renovated by Murrell. DNA testing of blood found in the basement of the Murrell house matched the victim's DNA.

Glover's pending action contends that his trial counsel was ineffective: for failing to object to the admission of cellular

---

[2] The cell phone at issue was owned by Petitioner's mother but was purportedly used by Glover during the relevant time period.

telephone site data evidence (Ground One); neglecting to impeach Commonwealth witness McCauley (Ground Two); not opposing introduction of unverified cell phone records (Ground Three); failing to present evidence showing that another person, Keisha Walker, had motive to commit the crime (Ground Five); not investigating alibi witnesses (Ground Seven); and not informing Petitioner of his right to present character witnesses (Ground Eight).

Petitioner further contends that the trial court erred in denying his claim of improper jurisdiction (Ground Four) and by not allowing witness Aikens to testify regarding an excited utterance attributed to Walker (Ground Six).[3] Petitioner acknowledges that Grounds One and Two were not raised before the Pennsylvania state courts. See Doc. 1, ¶ 12.

## Discussion

### Grounds One & Two

Respondent initially asserts that Grounds One and Two should be dismissed for failure to exhaust state remedies. See Doc. 17-1, p. 14. Moreover, entry of dismissal is appropriate because Petitioner has failed to demonstrate cause as to why those procedurally defaulted claims should be entertained by this Court. Petitioner counters that his non-exhaustion of both arguments

---

[3] Walker is described as being one of Person's girlfriends who purportedly stated that the victim got what he deserved because he had infected her with a sexually transmitted disease.

4

should be excused because it resulted from the ineffective assistance of PCRA counsel.

Title 28 United States Code Section 2254(b)(1) provides that an application for a writ of habeas corpus filed on behalf of a person in custody pursuant to the judgment of a State court cannot be granted unless the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available state corrective process; or there are existing circumstances which render the state process ineffective.[4] The exhaustion requirement is not a mere formality. It serves the interests of comity between the federal and state systems, by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights. <u>Crews v. Horn</u>, 360 F.3d 146, 151 (3d Cir. 2004).

The United States Court of Appeals for the Third Circuit has stated that "[U]nder 28 U.S.C. § 2254(c), such a petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." <u>Wenger v. Frank</u>, 266 F.3d 218, 223-24 (3d Cir. 2001).

"A state prisoner is generally barred from obtaining federal

---

[4] However, a Section 2254 petition may be denied on the merits notwithstanding the failure of a petitioner to exhaust available state court remedies.

habeas relief unless the prisoner has properly presented his or her claims through one 'complete round of the State's established appellate review process.'" Woodford v. Ngo, 548 U.S. 81, 92 (2006) (internal citations omitted); O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999)(while exhaustion does not require state prisoners to invoke extraordinary remedies, the state courts must be afforded one full opportunity to resolve any constitutional issues via completion of the State's established appellate review process). The United States Supreme Court in O'Sullivan explained, that state prisoners must "file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." Id. at 847. The Supreme Court added that, in determining whether a state prisoner has preserved an issue for presentation in a federal habeas petition, it must be determined not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts. See id. at 848.

Fair presentation requires that the "substantial equivalent" of both the legal theory and the facts supporting the federal claim are submitted to the state courts, and the same method of legal analysis applied in the federal courts must be available to the state courts. Evans v. Court of Common Pleas, 959 F. 2d 1227, 1230 (3d Cir. 1992); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir.

1997). Moreover, to satisfy exhaustion, the state court must be put on notice that a federal claim is being asserted. Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001). The exhaustion requirement is satisfied if the petitioner's claims are presented through a collateral proceeding, such as a petition under the PCRA, and it is not necessary to present federal claims to state courts both on direct appeal and in a PCRA proceeding. Evans, 959 F.2d at 1230.

When a claim has not been fairly presented to the state courts but further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility. See Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); Toulson v. Beyer, 987 F.2d 984, 987-88 (3d Cir. 1993). Such a claim is procedurally defaulted, not unexhausted. A federal habeas court cannot review a procedurally defaulted claim, "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Beard v. Kindle, 558 U.S. 53, 55 (2009). Procedural default can only be excused if a petitioner can show "cause" and "prejudice" or that a "fundamental miscarriage of justice" would result. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

As noted above, Petitioner admits that Grounds One and Two are unexhausted. See Doc. 1, ¶ 12. Since Glover filed both a direct appeal and a PCRA action and given the passage of time which has elapsed since his conviction, it is equally apparent that those arguments are procedurally defaulted. It has been recognized that

a procedurally defaulted claim may be reviewed if the default was cause by ineffective assistance of PCRA counsel. <u>Cox. V. Horn</u>, 757 F.3d 113, 119 (3d Cir. 2014).

Petitioner was appointed counsel to represent him during his PCRA proceedings. Although his counsel pursued multiple arguments, Grounds One and Two were not raised. Since Glover admits that he was not the owner of the cell phone which was tracked, he had no reasonable expectation of privacy relating to information obtained regarding the use of that device. Consequently, the Commonwealth's introduction of evidence considering the location of a cell phone not belonging to Glover but in his possession on the night of the murder was permissible and PCRA counsel cannot be deemed ineffective for failing to pursue a meritless argument. Since Petitioner has not demonstrated resulting prejudice or a fundamental miscarriage of justice, relief will be denied with respect to procedurally defaulted Ground One.

Ground Two asserts that trial counsel was ineffective for not cross examining Commonwealth witness McCauley regarding ownership of an automobile. The suggested line of questioning purportedly would have impeached McCauley's credibility. Respondent counters that the procedural default of this claim should not be excused because the witness's credibility was brought into question on cross examination when it was established that the witness had been convicted of tampering with evidence and had made prior inconsistent statements. Moreover, the veracity of a statement made by McCauley regarding ownership of the vehicle was raised

during cross examination.

Once again, despite a liberal review of the record, Petitioner has failed to satisfy his burden of showing that the procedural default of Ground Two should be excused since it has not been shown that a fundamental miscarriage of justice would result or that the alleged failure to pursue the line of questioning at issue was prejudicial.

In conclusion federal habeas corpus relief will be denied with procedurally defaulted Grounds One and Two.

## Merits Analysis

"The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).[5] See

---

[5] Specifically, 28 U.S.C. § 2254(d)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or
> (continued...)

generally, <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 114 (2009); <u>Gattis</u> <u>v. Snyder</u>, 278 F.3d 222, 234 (3d Cir. 2002); <u>Moore v. Morton</u>, 255 F.3d 95, 104-05 (3d Cir. 2001). The Supreme Court has held that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meaning. <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405 (2000). As explained in <u>Bell</u>, 535 U.S. at 694:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable . . . .

Furthermore, resolution of factual issues by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not. 28 U.S.C. § 2254(e)(1).

In summary, the appropriate inquiry for federal district courts in reviewing the merits of Section 2254 petitions is whether the state court decisions applied a rule different from the governing law set forth in United States Supreme Court cases, decided the case before them differently than the Supreme Court has

---

⁵(...continued)
> involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; . . . .

done on a set of materially indistinguishable facts, or unreasonably applied Supreme Court governing principles to the facts of the particular case. See Keller v. Larkins, 251 F.3d 408, 417-18 (3d Cir. 2001) (a district court entertaining a § 2254 action must first address whether the state court decision was contrary to Supreme Court precedent); Martini v. Hendricks, 188 F. Supp.2d 505, 510 (D. N.J. 2002) (a § 2254 applicant must show that the state court decision was based on an unreasonable determination of facts in light of evidence presented in the state court proceeding). Findings of fact by the state courts are presumed to be correct unless the petitioner shows by clear and convincing evidence that they are not. 28 U.S.C. § 2254(e)(1).

In Strickland v. Washington, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Id. at 687; accord Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994). In Deputy, the United States Court of Appeals for the Third Circuit also noted that it was not bound by any state court determinations as to a counsel's performance. Id. at 1494.

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). A reviewing court must "indulge a

11

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689; <u>Jermyn</u>, 266 F.3d at 282; <u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d Cir. 1996). If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, <u>Strickland</u>, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." <u>United States v. Wiener</u>, 127 F. Supp. 2d 645, 648 (M.D. Pa. 2001). A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel. <u>See Burger v. Kemp</u>, 483 U.S. 776, 794 (1987). It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. <u>Hartey v. Vaughn</u>, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and show prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694; <u>Frey v. Fulcomer</u>, 974 F.2d 348, 358 (3d Cir. 1992) "Without proof of both deficient performance and prejudice to the defense . . . it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." <u>Bell</u>, 535 U.S. at 695 (internal quotations and citation

omitted).[6]

At the time of Petitioner's state court proceedings, Strickland's familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. In addressing Glover's present ineffective assistance claims, the state courts applied essentially the same two-prong test for ineffective assistance articulated in Strickland.

Specifically, under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the Strickland test. See, e.g., Commonwealth v. Pierce, 527 A.2d 973, 975-77 (Pa. 1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, it cannot be said that the state courts applied rules contrary to prevailing principles established by the United States Supreme Court for the adjudication of ineffective assistance claims.

Accordingly, under § 2254(d)(1), the relevant inquiry in addressing the remaining ineffectiveness claims is whether the Pennsylvania state courts' decisions involved an unreasonable application of Strickland or were based on an unreasonable determination of the facts. Jacobs, 395 F.3d at 107 n.9; Werts,

---

[6] A court may choose to address the prejudice prong first and reject an ineffective assistance claim solely on the basis that the defendant was not prejudiced. See Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

228 F.3d at 204.

**Ground Three**

Ground Three asserts that Glover's trial counsel permitted the introduction of unverified phone records. It is undisputed trial counsel stipulated as to the authenticity of cell site data records. Petitioner is apparently arguing that those records should not have been admitted because there was no evidence showing that he was the person who actually initiated the calls from the cell phone at issue.

The stipulated records established only that a cell phone belonging to Petitioner's mother was used in proximity to both the time and area where the victim's body was found. Since there is no assertion that the cell site data records were not authentic, Petitioner's counsel's performance was not deficient for stipulating to the admission of the records. Moreover, there is no basis for a determination that agreeing to the stipulation was contrary to federal law.

**Ground Four**

Petitioner next contends that his conviction was improper because the trial court lacked jurisdiction. The apparent basis for this argument is that since the victim's body was recovered in the State of Maryland, there was no basis for jurisdiction in the Dauphin County Court of Common Pleas.

Findings of fact by the state courts are presumed to be correct unless the petitioner shows by clear and convincing

evidence that they are not. 28 U.S.C. § 2254(e)(1). It is well settled that "[a]ll Courts of Common Pleas have original jurisdiction over criminal proceedings." Commonwealth v. Nixon, 2014 WL 10588383 * 1 (Pa. Super. Sept. 12, 2014); Commonwealth v. McNeil, 665 A.2d 1247, 1251 (Pa. Super 1995). Likewise, "Pennsylvania trial courts have subject matter jurisdiction over criminal proceedings" for criminal code violations which occurred within the county of trial. Washington v. Sobina, 475 F.3d 162, 165 (3d Cir. 2007).

Pursuant to the above cited decisions, Ground Four clearly lacks merit since ample forensic evidence presented by the Commonwealth sufficiently established that the victim was killed in the basement of a home in Harrisburg which was owned by Glover's co-defendant. Accordingly, since Petitioner has not provided clear and convincing facts showing that the murder did not occur in Dauphin County, the state court's exercise of jurisdiction will not be overturned. Relief will be denied with respect to Ground Four.

**Ground Five & Six**

Ground Five asserts that trial counsel erred by not presenting evidence showing that another person had motive to commit the murder. Glover indicates that Person's girlfriend Keisha Walker should have been called as a defense witness. Ground Six asserts a related argument that the trial court erred by not allowing witness Aikens provide testimony as to an excited utterance allegedly spoken by Walker.

Petitioner explains that Person's girlfriend Keisha Walker had

15

motive to commit the crime because she believed that the victim had infected her with a sexually transmitted disease and that the trial court improperly excluded testimony by Aikens that he overheard a single hearsay statement attributed to Walker that the victim had gotten what he deserved.

As a general rule, federal habeas corpus review is not available to adjudge the correctness of a state court evidentiary ruling. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001); Lupkovich v. Cathel, Civil No. 04-5399, 2006 WL 3313975, at *4 (D. N.J., Nov. 14, 2006) ("Because the trial court's ruling limiting the cross-examination of Chester Anderson regarding his reputation for violence presents a question of state evidentiary law, it is not cognizable under § 2254.") In short, evidentiary rulings are matters of state law, and are not within the province of a federal habeas corpus court. See King v. Kerestes, Civil No. 09-1749, 2009 WL 5178805, at *3 (E.D. Pa., Dec. 21, 2009). It is only where an evidentiary ruling "so infuse[s] the trial with unfairness as to deny due process of law," Lisenba v. People, 314 U.S. 219, 228 (1941), that federal habeas corpus review may exist.[7]

"Hearsay is a statement, other than one made by the declarant

---

[7] Evidence is generally excluded only if its prejudicial effect substantially outweighs its probative value. Perryman v. H & R Trucking, 135 Fed. Appx. 538, 541-42 (3d Cir. 2005). This well settled evidentiary principle "implements a presumption in favor of admissibility." See id. at 542. It is also well recognized that a trial judge is in the best position to render a determination as to potential prejudicial effect.

while testifying at trial, offered in evidence to prove the truth of the matter asserted." United States v. Linwood, 142 F.3d 418, 424-25 (7th Cir. 1998). Testimony offered for the purpose of showing its effect on the listener is a non-hearsay use and therefore admissible. United States v. Lambinus, 747 F.2d 592, 597 (10th Cir. 1984) (testimony offered for its effect on the listener is a non-hearsay use). Furthermore, "reviewing courts must be deferential in their scrutiny and scrupulously avoid the distortions of hindsight by viewing performance from counsel's perspective at the time." Everett v. Beard, 290 F.3d 500, 509 (3d Cir. 2002).

In the instant case, the challenged hearsay would have been offered to prove the truth of the matter asserted, that Walker had a motive to commit the crime in that she stated that the victim got what he deserved for infecting her with a sexually transmitted disease and not simply to show the effect it had on the listener, Aikens. As such, the trial court's decision to exclude the hearsay testimony by Aikens was a reasonable exercise of discretion. Moreover, the decision by Petitioner's trial counsel not to call Walker as a witness was a reasonable tactic given that there was no evidence other then a single passing remark which could support the highly speculative claim that Walker had involvement in the murder.

Moreover, there has been no sufficient showing that the outcome of the proceedings would have been different if the excluded testimony was allowed and as such federal habeas corpus relief is not warranted with respect to Grounds Five and Six.

## Ground Seven

Ground Seven maintains that trial counsel was ineffective for failing to investigate alibi witnesses and pursue an alibi defense. Glover states that his girlfriend, Christina Hughes; his mother; and brother could have given testimony in support of an alibi defense that he and Hughes were viewing a movie which they had rented on the evening of the crime.

According to Respondent, Hughes was the only individual who asserted that she could provide an alibi for the Petitioner. However, Hughes gave grand jury testimony under oath stating that she was at work on the night of the murder. Moreover, records from the video store where the movie was obtained established that the film was not rented until the day after the murder. Moreover, Jason Glover the Petitioner's brother testified that he did not see his brother on the night of the murder.

As explained in Strickland, 466 U.S. at 690, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." An application of those standards to the above factors clearly support the conclusion that Petitioner is not entitled to federal habeas corpus relief because there was competent evidence which clearly contradicted his purported alibi.

**Ground Eight**

Petitioner's final argument assert that counsel's performance was deficient for failing to call character witnesses. Any such witnesses would have been subject to cross examination regarding topics such as Glover's involvement in a fraudulent bank loan scheme and his prior involvement in altercations which involved his use of a gun.

Once again given the deference afforded to tactical decisions made by trial counsel and the circumstances of this case, it cannot be concluded that the failure to present character witnesses was unreasonable. See Palmer v. Hendricks, 592 F. 3d 386, 391-92 (3d Cir. 2010)(considerable deference must be given to the legal and factual determinations made by state courts). Relief will also be denied with respect to Glover's final argument. An appropriate Order will enter.

RICHARD P. CONABOY
United States District Judge

DATED: AUGUST 14, 2017